Good morning, Your Honors. May it please the Court, Deputy Federal Public Defender John Rappaport for Petitioner Appellant George Anthony Carrales. This Court held in Sanders v. Lamarck that the protection of holdout jurors from coercion has been a fundamental part of the Court's jurisprudence and that the removal of a holdout juror is the ultimate form of coercion. Now, Carrales is entitled to habeas relief under Sanders, a case that the magistrate judge didn't even cite, because the request for Juror 9's discharge stemmed from doubts that she had about the sufficiency of the State's case. It's like the Eleventh Circuit warned about in the Abel case. When eleven jurors come together and reach an agreement, they begin to see the holdout juror, the twelfth juror, as an obstructionist and the positions that he or she is taking as somehow illegitimate. But in this case, Juror 9 clearly had doubts about the sufficiency of the State's case, and that's what caused her to be unable to commit and unable to vote with the majority at that time. Now, that's not what the District Court held. What is our standard of review here? How do we analyze this? Well, I think the review of the District Court's decision is de novo. Obviously, we're proceeding under AEDPA, so we have to deal with 2254-D2. I'm not sure I understand your question. What's the standard of review that applies in this case? It would be de novo except for any factual findings that the District Court made, which would be reviewed for clear error. Well, didn't the District Court find, as a matter of fact, that the juror spent quite a bit of time talking about her own personal experiences as an ER nurse, and that was in violation of the instructions? I think it's clear, a clear finding by the trial judge that there was misconduct. So what do we do with that? Well, I think if you look more closely at the record, you can see that the things that Juror 9 was talking about when she referred to her nursing experience were really matters of general currency. That's a term that this Court used in Fields v. Brown. She talked about two things. One was the relative absence of blood from the truck of Corrales and also Lomelli, the man who picked the victim up on the street. But that's something that Duran, the victim, had testified about. He testified he was drenched in blood. He was soaked in blood. And so I think it's very logical for Juror 9 to ask, you know, why wasn't there more blood in the vehicles? And the other thing she talked about was the fact that the State had not presented the victim's clothing. And she did say that, well, I'm an emergency room nurse, and we usually preserve the clothing. But there was also testimony that a number of jurors were interested in the missing clothing. And I think Juror 7 testified and said several of us were wondering about the clothing. So I don't think when you look at it more carefully that it actually did relate to her nursing experience at all. And she certainly allowed to refer to her profession, but she was not relying. What you're asking us to do isn't that to engage in a reexamination of the fact-finding, which we're limited in our ability to reexamine the facts. This court is certainly limited by EdPub, but it's 2254 D2 is not an insatiable standard. And Taylor v. Maddox lays out ways that we can look at the record to determine whether the state court's decision resulted from unreasonable determination of the facts. And one of the ways that we can do that is if the factual findings were infected by substantive legal error. And I think that both federal case law and state case law, as was discussed in the brief, would support our argument that what Juror 9 did when she referred to her nursing experience was not misconduct at all. And so if the state court, when it made that factual finding, while she committed misconduct by referring to her nursing experience, if that factual finding was infected by substantive legal error, which we asserted that it was, then this court does have the discretion to set it aside under 2254 D2 and Taylor v. Maddox. I think the discharge here was, it was ostensibly grounded in her misconduct. Originally, the hearing was undertaken to determine whether she was refusing to deliberate. That's what the note said. She's refusing to deliberate. I think it became quite clear that that wasn't the case. Many of the jurors were able to discuss her positions on the evidence, discuss her arguments. She was clearly voicing her views on the evidence or the missing evidence. But the trial judge in the state court made a pretty extensive survey, did he not? He did. He did. He didn't simply take that passage from the note as a given. That's right. He did make an extensive survey, and I think if you read the record of that survey, juror after juror is saying she wasn't really deliberating at the time we sent the note. She said, I can't make up my mind right now. Many of the jurors used the language right now, right now. But deliberations could continue. I think that there's a chance we could continue. Things have gotten better since the note. Many of the jurors testified about how, well, she hadn't made up her mind before the deliberations because, in fact, she changed her mind during the deliberations. If the court was correct or at least made a permissible finding with respect to juror misconduct by referring to evidence that wasn't in the record about procedures at the hospital and so forth, then the other reasons, it seems to me, would not matter. In other words, you don't need this to win, right? I mean, it seems like if she did engage in misconduct, you lose, and if she didn't. Well, I do think that this Court has to deal with a particular question here that's a little bit unusual under AEDPA. The State court decision discusses a number of factors. There's her reference to religion, her reference to her nursing experience, all the various factors. And we've argued in the briefs, and I will argue today, that certain of those factual bases for the ultimate decision to remove her were unreasonable up to the AEDPA standard. And what Taylor v. Maddox says is if you have unreasonable factual determinations, you're supposed to set them aside. Well, on some of those, there was conflicting testimony, for example, about religion. That's right. There was one juror who said that she had mentioned it, and even though she denied it. Well, that's right, and I think I'll answer your question as I finish my previous answer. Under Taylor v. Maddox, you're supposed to set aside the unreasonable factual determinations and replace them with factual findings if necessary. Now, once you set aside the unreasonable factual determinations, there's no legal decision to defer to anymore because the state court never decided whether her removal was justified unless then the full panoply of reasons. And that, I think, is a question that this court has to answer de novo under France v. Hazy and other cases like that. But the court still does have to decide if there was a constitutional violation here, and the court must look at the totality of the reasons that were given for the juror 9's removal, set aside the unreasonable ones, and then determine whether the court believes that her removal was justified. And we actually, in the briefing, did not attack every single one of the answers as unreasonable because I'm not sure that we could meet that standard. But I do think that certain crucial material fact findings were unreasonable. For instance, the state court said she testified that she had made up her mind, but she never did. She doesn't say it anywhere. She calls herself undecided seven times. So that's an unreasonable factual determination. We have to pull that out of the calculus and set it aside. And then the court has to look at what's left de novo and determine whether there's a constitutional violation. And I would assert that under Sanders v. Lamarck there is. I don't think Sanders is entirely explicit about the legal theory, the discussion of the constitutional violation in Sanders. Well, the hurdle it seems to me that you have is that just because someone is a holdout juror doesn't insulate them from the court dealing with them if there are other problems, such as misconduct or refusal to deliberate, which might or might not go along with being a holdout juror. So it seems to me that you don't get there just by saying, well, she was the holdout juror. I agree. And I think Perez says that very clearly. But this court and the Supreme Court have both said, I think for very obvious reasons, that when there's one juror who's standing between the defendant and a conviction, that the most extreme care and caution are necessary. And here there were many remedies that the trial court could have taken before removing the jury. He could have re-instructed the jury. Something like the 100 percent sure comment is a perfect example. If you think that she has the wrong burden of proof in her mind, re-instruct the jury. You remind everyone of the appropriate burden of proof. And here the trial court jumped right to the most drastic remedy. And I think that's what violated the Constitution. In Perez, this Court discussed how the trial court took great pains to preserve the originally impaneled jury before removing the juror. But this judge didn't do anything even approaching what the trial judge in Perez did. I can see that my clock's running low. I wanted to try to save a little bit of time for rebuttal. You have 12 seconds. I'll do my best. All right. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Deputy Attorney General Mary Sanchez on behalf of the Warden. The State court here did not violate appellant's constitutional rights by removing Juror Number 9. The California Court of Appeals decision was based on a factual finding by the trial court that Juror Number 9 refused to follow juror instructions, CalJIT Number 1.03 and CalJIT Number 2.90. The trial court's factual findings here are entitled to special deference. The trial court made a credibility determination here. It found credible Juror Number 11's statement that Juror Number 9 stated several times that she needed to be 100% sure. Her need to be 100% sure violates CalJIT Number 2.90, which only requires the prosecution to prove a defendant's guilt beyond a reasonable doubt. Juror Number 9's explanation in this regard made no sense. This court cannot redetermine the credibility of witnesses whose demeanor has been observed by the state court. What about the argument which Mr. Rappaport makes that the observation that the juror had made up her mind is not valid? Well, I think ultimately it was a valid observation. And when you consider her final comments to the court asking to be removed from the panel because she did not want to deliberate any further, she did not feel comfortable explaining her decisions any further. And so I think ultimately that comment was validated by Juror Number 9's final comments to the court. She was, in essence, saying she doesn't want to deliberate any further. And so I don't think that that one comment by the trial court, taken out of context, should be used to overturn the decisions of the state appellate court. And her comment that she needs to be 100% sure, would you say that's consistent with that passage? I have a hard time finding any consistency in her comments. She was very difficult to follow in her reasoning. The trial court noted it himself. Although I would comment that Juror Number 9 herself stated that her fellow jurors were not cruel to her. They did not taunt her. But I do think the record shows that she was very hard to follow. Her reasoning sometimes just didn't make sense. So it's hard for me to answer your question whether that comment made sense. She had some very solid notions about what should have been presented in the emergency room, based on her experience, especially regarding the clothing. But her testimony there was very much in the mold of an expert witness. What happens to the clothing of the gunshot wound victims is something that's outside the purview of your typical juror. And so she was, I think, impermissibly stepping into the void and providing expert witness testimony as a reason for why she could not find the evidence sufficient. But ultimately, that's not why she asked to be removed from the service. She asked because she was tired of explaining herself. And I think that's a critical factor, that she was not removed because she thought that the State's case had not been met, but merely because she was tired of explaining herself. Anything further? I just would have one further comment. There is no clearly established federal law, as determined by the United States Supreme Court, that compels a ruling that the removal of a lone holdout juror violates the Constitution. Thus, it cannot be said that the State court's unreasonably applied, clearly established federal law. Wright v. Van Patten and Kerry v. Musladeen both stand for the proposition that where there is no clear holding from the United States Supreme Court on a given issue, then it cannot be said that the State court unreasonably applied, clearly established federal law. Thus, I'd ask this Court to affirm the District Court's decision. Thank you. Thank you, Counsel. Mr. Rappaport, any observations? Are you going to hold me to 12 seconds? We'll see. Talk fast. I will try to keep it very, very brief, truly. There's discussion here that the decision to remove the juror was because of her misconduct. But the record shows that other jurors, including the foreperson, committed blatant misconduct. The foreperson was the one who sent the note saying, we're divided 11 to 1, juror 9 won't deliberate. There was a jury instruction directly on point. And I think that the differential treatment of the misbehaving jurors, if we want to call them that, does reveal a certain desire to achieve a unanimous verdict. Not necessarily to achieve a unanimous guilty verdict, but to achieve a unanimous verdict. And that's something that Perez and Sanders talk about. I also think that the fact that juror 9 requested removal here was because she was feeling pressured by the other jurors. And you can't let 11 jurors pressure one juror until she wants to get off the jury. I think we understand your argument, counsel. Thank you very much. The case just argued will be submitted for decision. And we will hear argument next in Skinner v. Northrop Grumman.
judges: Goodwin, O'scannlain, Graber